UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

THE ANNUITY, WELFARE AND
APPRENTICESHIP SKILL IMPROVEMENT
& SAFETY FUNDS OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 15, 15A, 15C & 15D,
AFL-CIO, *by their Trustees James T. Callahan,*
*Thomas A.  Callahan, Michael Salgo, and*
*Denise M. Richardson*, CENTRAL PENSION
FUND OF THE INTERNATIONAL UNION
OF OPERATING ENGINEERS, *by its Chief*
*Executive Officer Michael A. Crabtree*, and
INTERNATIONAL UNION OF OPERATING
ENGINEERS LOCAL 15, 15A, 15C & 15D,
AFL-CIO, *by its President & Business*
*Manager Thomas A. Callahan*,

                Plaintiffs,

      -against-

CARLO LIZZA & SONS PAVING, INC.,

             Defendant.

--------------------------------------------------------X

**REPORT & RECOMMENDATION**
**19 CV 2461 (BMC)(LB)**

**BLOOM, United States Magistrate Judge:**

      James T. Callahan, Thomas A. Callahan, Michael Salgo, and Denise M. Richardson, as

trustees of the Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the

International Union of Operating Engineers, Local 15, 15A, 15C & 15D, AFL-CIO, ("Local 15

Trust Funds"), Michael A. Crabtree, as Chief Executive Officer of the Central Pension Fund of the

International Union of Operating Engineers ("CPF"), and Thomas A. Callahan, as President and

Business Manager of the International Union of Operating Engineers Local 15, 15A, 15C & 15D,

AFL-CIO ("Local 15") bring this action against defendant Carlo Lizza & Sons Paving, Inc.

pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001

*et seq.* ("ERISA") and to the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 *et seq.* ("LMRA").

Despite proper service of the summons and complaint, defendant has failed to plead or otherwise defend this action. Plaintiffs now move for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The Honorable Brian M. Cogan referred plaintiffs' motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted in part and denied in part and a default judgment in the amount of **$1,374,243.62** plus interest should be entered against defendant. Plaintiffs' request for $13,035.35 in audit fees should be denied with leave granted to supplement the record as described in Section II. E within fourteen days of this Report and Recommendation.

## BACKGROUND[1]

The Local 15 Trust Funds and the CPF are multi-employer/employee benefit plans under ERISA and the LMRA. Compl. ¶¶ 7–8,11–12. On September 1, 1999, defendant entered into a collective bargaining agreement ("CBA") with plaintiffs which is currently in effect and has not been voided by the parties. Compl. ¶ 19; ECF No. 11, Callahan Affidavit ("Callahan Aff.") ¶ 5; ECF No. 14–2. Defendant agreed to be "bound to all of the terms and conditions" of the CBA. CBA ¶ 1 ECF No. 14–2.

---

[1] The facts are drawn from the uncontested allegations in plaintiffs' complaint and documents incorporated by reference and are taken as true for the purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment); Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383 (NGG)(VMS), 2014 WL 1311709, at *3 n.1 (E.D.N.Y. Mar. 28, 2014) (relevant CBAs were deemed to be incorporated by reference into the complaint).

The CBA, which incorporates the Local 15/General Contractors Association ("GCA") Agreement,[2] requires defendant to remit: (1) contributions to the Local 15 Trust Funds and CPF based upon each regular and overtime hour of work performed by covered employees, and (2) employee-allocated supplemental union dues and political action committee payments to Local 15, based upon each regular and overtime hour of work performed by those covered employees. Compl. ¶¶ 20–21.

Pursuant to the CBA and the applicable sections of the Trust Agreements, plaintiffs conducted an audit of defendant's books and records for the period of July 1, 2013 through June 30, 2017 ("Audit Period") to determine whether defendant had made the required payments. Compl. ¶ 23; ECF No. 14-5 at 8; ECF No. 14-6 at 20–21; ECF No. 14-7 at 12–13; ECF No. 14-8 at 14. The audit revealed that defendant owed plaintiffs ERISA contributions totaling $995,601.50 with interest and non-ERISA contributions (supplemental dues and political action committee payments) totaling $77,626.53 with interest for the Audit Period. Compl. ¶¶ 24–26; ECF No. 14-9 at 2. Defendant has not paid any portion of the deficiency identified by the audit. Compl. ¶ 30.

## PROCEDURAL HISTORY

Plaintiffs filed this instant action on April 26, 2019. ECF No. 1. Plaintiffs served the summons and complaint on defendant on May 15, 2019 by personally serving Nancy Dougherty, defendant's designated authorized agent in the Office of the Secretary of State of New York. ECF No. 6. Plaintiffs allege that defendant's failure to make contributions and other payments violates defendant's contractual and statutory obligations under the CBA, ERISA, and the LMRA.

---

[2] Local 15 and the GCA of New York, Inc. entered into a collective bargaining agreement regarding heavy construction work (i.e. subsurface construction, excavation, demolition, and site work). Callahan Aff. ¶¶ 3–4; see also ECF No. 14-3 at 17–18. Because defendant performs heavy construction work, the Local 15/GCA Agreement is incorporated into the parties' CBA. Callahan Aff. ¶ 5.

Defendant failed to respond to the complaint. At plaintiffs' request, the Clerk of Court noted an entry of default against defendant on June 12, 2019. ECF No. 9. Plaintiffs now move for a Default Judgment. ECF No. 10; ECF No. 15, Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment Against Defendant Carlo Lizza & Sons Paving, Inc. ("Memo").

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A plaintiff may then move for a default judgment against a defendant. Fed. R. Civ. P. 55(b)(2). If a defendant fails to appear or move to set aside the default under Rule 55(c), the Court may enter a default judgment on plaintiff's motion. Id.

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc., 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993)). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); see also Universal Elec. Corp., 970 F. Supp. 2d 108, 119

(E.D.N.Y. 2013). Regardless of the assumption of truth, the Court has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (citation omitted). If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

In evaluating defendant's liability, the Court is limited to the four corners of the complaint. Rolls-Royce plc, 688 F. Supp. 2d at 153. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

## I.    Defendant's Liability under ERISA and the LMRA

The factual allegations in plaintiffs' complaint establish defendant's liability under ERISA and the LMRA. Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. "ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." Trs. of the Local 7 Tile Indus. Welfare Fund v. City Tile, Inc., No. 10 CV 322 (SJ)(ALC), 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), adopted by, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011).

In the instant case, plaintiffs allege that defendant is an "employer," Compl. ¶ 18; that the Local 15 Trust Funds and the CPF are "employee pension benefit plans," "employee welfare benefit plans,' and "multi-employer/employee benefit plans," id. ¶¶ 6–8, 11–12; and that the named trustees are plan "fiduciaries" as defined by ERISA, id. ¶¶ 5, 10. Plaintiffs further allege that defendant was obligated to make contributions to the plaintiffs pursuant to the CBA, and that defendant failed to make all of the required contributions. Id. ¶¶ 20–32. These factual allegations are sufficient to establish defendant's liability under ERISA for the unpaid contributions.

Section 301(a) of the LMRA gives the Court jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce[.]" 29 U.S.C. § 185(a). Plaintiffs allege that Local 15 is a labor organization pursuant to the LMRA and that defendant was obligated to make supplemental union dues and political action committee payments contributions pursuant to the CBA. Compl. ¶¶ 13, 21, 26. Thus, Local 15's uncontested allegations are sufficient to establish liability under the LMRA as to the unpaid supplemental union dues and political action committee payments. See Finkel v. Allstar Elec. Corp., No. 11-CV-3222 (KAM)(RER), 2013 WL 4806951, at *4 (E.D.N.Y. Sept. 9, 2013) ("Plaintiff has established liability under Section 301 of the LMRA because it sufficiently pleads that [defendant] failed to remit the Required Contributions in accordance with their obligations under the CBAs."); cf. The Annuity, Pension, Welfare, Training and Labor Mgmt. Coop. Tr. Funds of the Int'l Union of Operating Eng'rs Local 14-14 B, AFL-CIO v. BKS-NY, LLC, No. 18 Civ. 0256 (LDH)(VMS), 2018 WL 4522103, at *4–5 (E.D.N.Y. Aug. 6, 2018) (recommending that the Court deny unpaid contributions to a political action committee as the CBA did not reference a political action committee payment obligation as to the specified plaintiff).

Plaintiffs' complaint sufficiently establishes defendant's liability under ERISA and the LMRA for the Audit Period, July 1, 2013 through June 30, 2017. See Labarbera v. Frank J. Batchelder Transp. LLC, No. 08 CV 3387 (SJ)(JMA), 2009 WL 240521, at *3 (E.D.N.Y. Feb. 2, 2009) (finding liability based on allegations that defendant was a party to a CBA and failed to make required contributions). Therefore, it is respectfully recommended that the Court should grant plaintiffs' motion for a default judgment.

## II.    ERISA Damages

A defendant's default amounts to admission of liability for all well pleaded factual allegations in the complaint, *except* those relating to damages. Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."); Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). To determine the amount of damages, the district court "may conduct hearings or make referrals," Fed. R. Civ. P. 55(b)(2), but "[d]etailed affidavits and other documentary evidence can suffice in lieu of an evidentiary hearing." Chanel, Inc. v. Louis, No. 06-CV-5924 (ARR)(JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)). On a motion for a default judgment, plaintiffs have the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111)).

Plaintiffs request $1,387,278.97 in damages. Memo at 8. In support of plaintiffs' application for damages, they submit the following:

1. Affidavit of Thomas Callahan, the president and business manager of Local 15 and a trustee of the Local 15 Trust Funds, ECF No. 11, ("Callahan Aff.");
2. Affidavit of Catherine Chase, the day-to-day administrator of the Local 15 Trust Funds, ECF No. 12, ("Chase Aff.");
3. Affidavit of Lisa Madeiras, payroll audit manager of the accounting firm Schultheis & Panettieri, LLP, retained by plaintiffs to conduct audits of contributing employers' payroll records, ECF No. 13, ("Madeiras Aff.");
4. Affidavit of James Michael Steinberg, plaintiffs' counsel, ECF No. 14, ("Steinberg Aff."), which attaches
   o the summons and the complaint, ECF No. 14-1;
   o the CBA, ECF No. 14-2;
   o the Local 15/GCA Agreements for the periods of July 1, 2010 through June 30, 2014 and July 1, 2014 through June 30, 2018, ECF Nos. 14-3, 14-4;
   o the Trust Agreements, ECF Nos. 14-5, 14-6, 14-7, 14-8;
   o the auditor's report, ECF No. 14-9;
   o the wage scale schedules identifying the contribution rates, ECF No. 14-10;
   o an invoice for service of process, ECF No. 14-11; and
   o plaintiffs' counsel's reconstructed time records, ECF No. 14-12.

Reviewed together, plaintiffs' submissions are sufficient for the Court to calculate damages for the Audit Period with reasonable certainty. No evidentiary hearing is needed.

**A. Unpaid Contributions**

Pursuant to 29 U.S.C. § 1132(g)(2)(A), plaintiffs are entitled to recover unpaid contributions that defendant was required to make, but failed to pay, in accordance with the CBA. The auditors reviewed defendant's books and records for the Audit Period to determine whether defendant made the appropriate ERISA and non-ERISA contributions. Madeiras Aff. ¶¶ 1–2.

The auditor reviewed defendant's payroll records to determine the total number of regular ("Reg") and/or double-time ("DT") hours worked by each Local 15 member employed by defendant during each of the 12-month periods within the Audit Period. Id. ¶ 3. The total number of hours worked by each employee is reported in the "Audited Hours" column of the Audit Report. Id.

The auditor then reviewed the "stamp redemption reports" maintained by the Local 15 Trust Funds to determine the number of hours redeemed by employees. Id. ¶ 4. These hours are

reported in the "Redeemed Hours" column in the audit report. Id. The "Redeemed Hours" were subtracted from the "Audited Hours" and the resulting calculation is reported in the "Difference" column of the Audit Report. Id.

Because employers are awarded credit for any stamps purchased by the employer but not redeemed by the employee, the employer is credited for any such unredeemed stamps as reflected in the Audit Report under the "Credit for Unredeemed Hours" row. Id. Accordingly, the unredeemed hours were credited to the employer (i.e., subtracted from the "Difference"), and the resulting number represents the "Total Hours Due." Id.

The auditor then multiplies the "Total Hours Due" by the applicable contribution rates which are identified on the Wage Schedules, ECF No. 14-10 at 11 (effective after July 1, 2013), 26 (effective after July 1, 2014), 41 (effective after July 1, 2015), 56 (effective after July 1, 2016), to calculate the total amount owed, or the "Principal." Madeiras Aff. ¶ 5.

The Audit Report shows defendant owes the following ERISA contributions for each 12-month period in the Audit Report: [3]

---

[3] The Court references the years within the Audit Period as follows:
July 1, 2013 – June 30, 2014 = **Period 1**
July 1, 2014 – June 30, 2015 = **Period 2**
July 1, 2015 – June 30, 2016 = **Period 3**
July 1, 2016 – June 30, 2017 = **Period 4**

|  | Period 1 | Period 2 | Period 3 | Period 4 | **TOTAL** |
|---|---|---|---|---|---|
| **Welfare** | $63,238.00 | $56,006.25 | $61,965.00 | $60,729.00 | $241,938.25 |
| **Pension** | $51,472.00 | $43,464.40 | $49,880.10 | $44,759.00 | $189,575.50 |
| **Annuity** | $101,632.50 | $88,837.50 | $97,078.50 | $94,032.00 | $381,580.50 |
| **Apprentice** | $4,517.00 | $3,862.50 | $6,196.50 | $5,877.00 | $20,453.00 |
| **MRA** | $11,292.50 | $9,656.25 | $10,327.50 | $9,795.00 | $41,071.25 |
| **Vacation** | $31,619.00 | $27,037.50 | $30,982.50 | $31,344.00 | $120,983.00 |
| **TOTAL** | $263,771.00 | $228,864.40 | $256,430.10 | $246,536.00 | **$995,601.50** |

ECF No. 14-9 at 4, 6, 8, 10. Having reviewed the Audit Report and finding it accurate, it is respectfully recommended that the Court should award plaintiffs $995,601.50 in unpaid ERISA contributions.

### B. ERISA Prejudgment Interest

Plaintiffs are entitled to prejudgment interest on the delinquent contributions. 29 U.S.C. § 1132(g)(2)(B). The ERISA provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2)(E). Plaintiffs used the following formula to calculate prejudgment interest:

[number of days between the end of the Period and January 3, 2019[4]] **x**
[interest rate of 6% (9% for the Pension Fund) pursuant to the CBA[5]] ÷
**365 x** [principal due per Period]

---

[4] Plaintiffs request prejudgment interest on the unpaid contributions from the end of each 12-month period through January 3, 2019. It is unclear why plaintiffs used January 3, 2019 date as the end date. Plaintiffs will be entitled to prejudgment interest from January 4, 2019 to the date of judgment using the same formula.
[5] ECF Nos. 14-5 at 22 (Annuity Fund), 14-6 at 31 (Welfare Fund), 14-7 at 18 (Apprenticeship/Training Fund), and 14-8 at 14–15 (CPF).

Madeiras Aff. at 3. Using this formula, the interest due on defendant's delinquent contributions is as follows:

| | | Period 1 | Period 2 | Period 3 | Period 4 | |
|---|---|---|---|---|---|---|
| | no. of days between end of period through 1/3/2019 | 1,648 days | 1,283 days | 917 days | 552 days | |
| | **Principal per Period** | **Interest Due** | | | | **Total Interest Due** |
| **Welfare** | 1. $63,238.00 2. $56,006.25 3. $61,965.00 4. $60,729.00 | $17,131.43 | $11,811.95 | $9,340.59 | $5,510.53 | $43,794.50 |
| **Pension** | 1. $51,472.00 2. $43,464.40 3. $49,880.10 4. $44,759.00 | $20,915.96 | $13,750.23 | $11,278.37 | $6,092.13 | $52,036.69 |
| **Annuity** | 1. $101,632.50 2. $88,837.50 3. $97,078.50 4. $94,032.00 | $27,532.66 | $18,736.19 | $14,633.58 | $8,532.44 | $69,434.87 |
| **Apprentice** | 1. $4,517.00 2. $3,862.50 3. $6,196.50 4. $5,877.00 | $1,223.67 | $814.61 | $934.06 | $533.28 | $3,505.62 |
| **MRA** | 1. $11,292.50 2. $9,656.25 3. $10,327.50 4. $9,795.00 | $3,059.18 | $2,036.54 | $1,556.76 | $888.80 | $7,541.29 |
| **Vacation** | 1. $31,619.00 2. $27,037.50 3. $30,982.50 4. $31,344.00 | $8,565.72 | $5,702.31 | $4,670.29 | $2,844.15 | $21,782.47 |
| **TOTAL PRINCIPAL** | $995,601.50 | | | | **TOTAL INTEREST** | **$198,095.44** |

It is respectfully recommended that the Court should award the Local 15 Trust Funds and CPF $198,095.44 in prejudgment interest on the principal sum of $995,601.50 calculated at the interest rates of 6% (9% for pension contributions) through January 3, 2019. Furthermore, it is recommended the Court should award the Local 15 Trust Funds and CPF an additional sum of

interest on the principal sum of $995,601.50 to be calculated at the annual rate of 6% (9% for pension contributions) for the period January 4, 2019 through the date judgment is entered by the Court.

### C. Liquidated Damages

Plaintiffs are entitled to liquidated damages on the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20% of the delinquent contributions). 29 U.S.C. § 1132(g)(2)(C)(i)–(ii). Plaintiffs request $99,560.15 in liquidated damages on the principal sum of $995,601.50, which they calculated at a 10%[6] rate in accordance with the applicable provisions of the Trust Agreements. See ECF Nos. 14-5 at 22 (Annuity Fund), 14-6 at 31 (Welfare Fund), 14-7 at 18 (Apprenticeship/Training Fund), and 14-8 at 14–15 (CPF). Having reviewed the applicable provisions of the Trust Agreements, it is respectfully recommended that the Court should award $99,560.15 in liquidated damages to the Local 15 Trust Funds and CPF.

### D. Attorney's Fees

Plaintiffs are entitled to reasonable attorney's fees. 29 U.S.C. § 1131(g)(2)(D); see also ECF Nos. 14-5 at 22 (Annuity Fund), 14-6 at 31 (Welfare Fund), 14-7 at 18 (Apprenticeship/Training Fund), and 14-8 at 14–15 (CPF). Courts in this Circuit award attorney's fees to a prevailing party by calculating the "presumptively reasonable fee." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009). The Court determines the presumptively reasonable fee by multiplying the number of hours the attorney spent on the litigation by "a

---

[6] Plaintiffs note that although CPF is entitled to liquidated damages in "an amount up to *twenty percent (20%)* of the amount found to be delinquent," ECF No. 14-8 at 14, CPF seeks liquidated damages at the 10% rate consistent with its co-plaintiffs. Memo at 15–16.

reasonable hourly rate." Gesualdi v. Interstate Payroll Co., Inc., 2:14-cv-06780 (ADS)(SIL), 2019 WL 109379, at *7 (E.D.N.Y. Jan. 4, 2019) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). A reasonable rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . where the district court sits." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008); see also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) ("[T]he requested rates [must be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."). After the reasonable hourly rate is determined, the Court multiplies that rate by the reasonable number of hours the attorney expended, to determine a presumptively reasonable fee. The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing Hensley, 461 U.S. at 437). A request for attorney's fees must be "supported by contemporaneous time records that show, 'for each attorney, the date, the hours expended, and the nature of the work done.'" Bd. of Trs. of Pointers, Cleaners & Caulkers Welfare Fund, Pension Fund and Annuity Fund v. Super Eagle Contracting Inc., No. 12-CV-0399 (KAM)(RER), 2013 WL 802034 at *4 (E.D.N.Y. Jan. 16, 2013), adopted by, 2013 WL 802847 (E.D.N.Y. Mar. 5, 2013) (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)).

The reasonable hourly rate for partners in this District ranges from $300 to $450. See, e.g., Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co., Inc., 270 F. Supp. 3d 593, 618 (E.D.N.Y. 2017) (finding that "prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 an hour . . . and some courts

13

"have recognized slightly higher ranges in this district of $300–$450 per hour for partners[.]" (collecting cases)).

Plaintiffs request an award of $2,850.00 in attorney's fees for 7.5 attorney hours expended at an hourly rate of $380.00. Memo at 16–18; see also ECF No. 14-12. Plaintiffs' counsel submits "reconstructed time records" based on his original, contemporaneous time sheets to support the attorney's fee request. ECF No. 14-12. The Annuity, Pension, Welfare and Training Funds of the Int'l Union of Operating Eng'rs, Local 14-14B AFL-CIO v. Superior Site Work, No. 15-CV-543(MKB), 2017 WL 639248, at *7 n.13 (E.D.N.Y. Feb. 16, 2017) ("[C]ourts recognize that attorney affidavits which set forth all charges with the required specificity but which are reconstructions of the contemporaneous [time] records . . . suffice to permit recovery of attorneys' fees[.]") (internal quotation marks and citation omitted). Mr. Steinberg is a partner of the law firm Brady McGuire & Steinberg, P.C., and has been practicing law for more than 24 years. Steinberg Aff. ¶¶ 1, 14. Plaintiffs' counsel's hourly rate is in line with awards in this District to counsel with comparable experience. See Finkel v. Athena Light & Power LLC, No. 14 Civ. 3585 (DLI) (PK), 2016 WL 4742279, at *11 (E.D.N.Y. Sept. 11, 2016) (awarding an hourly rate of $390.00 to a partner in an ERISA default judgment case); Gesualdi v. MBM Inds., Inc., No. CV-10-2607 (BMC), 2010 WL 3724348, at *2 (E.D.N.Y. Sept. 15, 2010) (same). Furthermore, the 7.5 hours Mr. Steinberg spent on this litigation falls well within the range considered reasonable in this district. Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383 (NGG)(VMS), 2014 WL 1311709, at *13 (E.D.N.Y. Mar. 28, 2014) (finding 23.8 hours spent on an ERISA default reasonable and collecting cases in which reasonable hours expended range from 14 to 28 hours). Accordingly, it is respectfully recommended that the Court should award $2,850.00 in attorney's fees to the Local 15 Trust Funds and CPF.

### E. Audit Fees

Plaintiffs request $13,035.35 in auditor's fees in accordance with the applicable provisions of the Trust Agreements. Memo at 18–19; ECF Nos. 14-5 at 22 (Annuity Fund), 14-6 at 31 (Welfare Fund), 14-7 at 18 (Apprenticeship/Training Fund), and 14-8 at 14–15 (CPF). Courts may award "such other legal or equitable relief as the Court deems appropriate," 29 U.S.C. § 1132(g)(2)(E) and regularly award reasonable audit costs. See, e.g., Gesualdi v. Andrews Trucking Corp., No. 09 CV 565 (SLT)(RML), 2010 WL 2292218, at *7 (E.D.N.Y. May 14, 2010), adopted by 2010 WL 2292392 (awarding $13,382.50 in audit fees).

Although plaintiffs are entitled to recover audit costs, "requests for audit fees must be supported by records . . . sufficient to allow the court to determine the reasonableness of audit costs." Trs. of Steamfitters' Local Union No. 638 v. Nexus Mech., Inc., No. 08-CV-3214 (RRM)(MDG), 2014 WL 1338377, at *8 (E.D.N.Y. Apr. 2, 2014) (internal quotation marks and citations omitted). "The evidence in support of recovering audit fees must include, at a minimum, some breakdown of the auditors' rates charged and hours expended." Gesualdi v. Diversified Carting, Inc., No. 10-2561(SIL), 2014 WL 5475357, at *3 (E.D.N.Y. Oct. 29, 2014) (internal quotation marks and citation omitted).

Here, the only evidence plaintiffs provide in support of the $13,035.35 in requested audit fees is the name of the public accounting firm which conducted the audit, Schultheis & Panettieri, LLC, Madeiras Aff. at 1, and the audit cost line item in the audit summary, ECF No. 14-9 at 1. As plaintiffs have failed to provide evidence in support of their request to recover audit fees as required, the Court respectfully recommends that plaintiffs' request for audit fees should be denied with leave to supplement the record within fourteen days. See Andrews Trucking Corp., 2010 WL

2301028, at *7 (E.D.N.Y. Mar. 22, 2010), adopted by 2010 WL 2292392 (denying requested audit fees and granting plaintiffs leave to provide supporting documentation).

**F. Costs**

"In a successful action under ERISA to recover delinquent contributions, courts award '[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients.'" Trs. of Plumbers Local Union No. 1 v. Temperini Mech., Inc., No. 12 Civ. 05646 (ILG)(SMG), 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting Trs. of the Road Carriers Local 707 Welfare Fund v. Goldberg, No. 08-CV-0884 (RRM)(MGD), 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)).

Plaintiffs request $510.00 in costs and disbursements, comprised of $400.00 for the filing fee and $110.00 for the process server. 29 U.S.C. § 1132(g)(2)(D); ECF No. 14-11. Plaintiffs submitted an invoice for the process server costs. ECF No. 14-11. Although plaintiffs did not submit a receipt for the filing fee, the Court takes judicial notice of the $400.00 filing fee. See BKS-NY, LLC, 2018 WL 4522103, at *12 (E.D.N.Y. Aug. 6, 2018) (taking judicial notice of the $400.00 filing fee). Accordingly, it is respectfully recommended that the Court should award plaintiffs $510.00 in costs.

## III. Non-ERISA Damages

Plaintiffs seek $77,626.53 in non-ERISA contributions, owed to Local 15 for supplemental union dues and political action committee payments pursuant to the terms of the CBA. ECF No. 14-10 at 2; Madeira Aff. at 3. As discussed, plaintiffs have sufficiently pled their claim for LMRA damages. According to the Audit Report, defendant failed to remit the following amounts:

|  | Period 1 | Period 2 | Period 3 | Period 4 | **TOTAL** |
|---|---|---|---|---|---|
| **PAC** | $451.70 | $386.25 | $413.10 | $391.80 | $1,642.85 |
| **Supp. Fees** | $18,790.72 | $17,304.00 | $19,828.80 | $20,060.16 | $75,983.68 |
| **TOTAL** | $19,242.42 | $17,690.25 | $20,241.90 | $20,451.96 | **$77,626.53** |

ECF No. 14-9 at 4, 6, 8, 10. Having reviewed the relevant Trust Agreements and the Audit Report and finding that the requested amount is accurate for the Audit Period, it is respectfully recommended that the Court should award $77,626.53 in LMRA damages to Local 15.

### A. Non-ERISA Prejudgment Interest

Plaintiffs seek prejudgment interest on the delinquent non-ERISA contributions. Because the CBA does not provide a rate of interest for delinquent non-ERISA contributions, plaintiffs request that the Court apply a 9% annual interest rate derived from New York C.P.L.R. § 5004, calculated using the "single reasonable intermediate date" of July 1, 2015. Memo at 20–21. Courts in this district have applied the § 5004 rate to calculate interest on non-ERISA delinquencies. Superior Site Work, 2017 WL 639248, at *8–9 (collecting cases). I therefore recommend awarding interest at the New York State statutory annual rate of nine-percent. See Nexus Mechanical, Inc., 2014 WL 1338377, at *6 (E.D.N.Y. Apr. 2, 2014) (awarding interest for non-ERISA damages at the statutory rate under New York law where CBA did not provide for the interest rate) (citing cases).

Where damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); see BKS-NY, LLC, 2018 WL 4522103, at *13 (applying the "single reasonable intermediate date."). Accordingly, courts calculating damages in ERISA cases "routinely calculate prejudgment interest from a midpoint date in the delinquency period." Superior Site Work, 2017 WL 639248, at *9.

17

Here, the daily prejudgment interest rate on the unpaid non-ERISA contributions, calculated at a rate of 9% per year is $19.14.[7] The intermediate date of the delinquency period— July 1, 2013 through June 30, 2017— is July 1, 2015. Accordingly, it is respectfully recommended that the Court should calculate the interest award to Local 15 by multiplying the daily prejudgment interest rate, $19.14, by the number of days between July 1, 2015 and the date of judgment.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that plaintiffs' motion for a default judgement should be granted. A default judgment should be entered against defendant in the amount of **$1,374,243.62** granting plaintiffs the following awards plus interest:

| Plaintiff Local 15 Trust Funds and CPF | Plaintiff Local 15 |
|---|---|
| $995,601.50 in unpaid ERISA contributions<br><br>$198,095.44 in interest on unpaid ERISA contributions (through January 3, 2019)<br><br>$99,560.15 in liquidated damages<br><br>$2,850.00 in attorney's fees<br><br>$510.00 in costs | $77,626.53 in unpaid union dues and PAC contributions |
| Total: **$1,296,617.09** + additional prejudgment interest from January 4, 2019 through entry of judgment. <u>See</u> Section II. B. | Total: **$77,626.53**, + additional prejudgment interest of $19.14 per day between July 1, 2015 through entry of judgment. <u>See</u> Section III. A. |

I further recommend that plaintiffs' request for $13,035.35 in audit fees should be denied, with leave to supplement the record within fourteen days. Plaintiffs are hereby ordered to serve a copy of this Report upon defendant at its last known address and to file proof of service with the Court forthwith.

---

[7] $77,626.53 x .09/365 = $19.14

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989).

SO ORDERED.

_____/S/_____
LOIS BLOOM
United States Magistrate Judge

Dated: August 22, 2019
       Brooklyn, New York